IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN SUK KIM,                              No. C 10-2101 CW

            Plaintiff,                   ORDER GRANTING IN
                                         PART AND DENYING
      v.                                 IN PART
                                         DEFENDANT'S MOTION
THOMAS J. VILSACK, Secretary of          FOR SUMMARY
the United States Department of          JUDGMENT
Agriculture,                             (Docket No. 58)

            Defendant.

_____/

      Plaintiff In Suk Kim charges Defendant Thomas J. Vilsack,

Secretary of United States Department of Agriculture, with age and

national origin discrimination and unlawful retaliation in

violation of the Age Discrimination in Employment Act (ADEA), 29

U.S.C. §§ 621-634, and Title VII, 42 U.S.C. §§ 2000e, et seq.

Defendant moves for summary judgment on all of Plaintiff's claims.

Plaintiff opposes Defendant's motion.  Having considered the

papers filed by the parties and their oral arguments during the

hearing, the Court GRANTS Defendant's motion in part and DENIES it

in part.

BACKGROUND

The following summary presents any disputed facts in the light most favorable to Plaintiff, as the non-moving party.[1]

Plaintiff was born in 1938 and is of Korean ancestry.  Compl. ¶ 3; Answer ¶ 3; Mot. for Summ. J. 2; Opp. 6.  From 1993 through 2001, Plaintiff was employed by the United States Department of Agriculture (USDA), first as a Development and Investigation chemist in the Food Safety Inspection Service Western Laboratory in Alameda, California and later as a Toxicologist in Washington, D.C.  Decl. of Richard M. Rogers (Rogers Decl.) ¶ 4, Ex. 6, Deposition of In Suk Kim (Kim Depo.), 15:2-16:22.  Plaintiff left the USDA in 2001 for personal reasons and moved back to California.  Id. at 15:25-16:2.

---

[1] Concurrently with her opposition to Defendant's motion, Plaintiff filed a separate eight-page document containing objections to certain evidence submitted by Defendant in support of the motion for summary judgment.  See Pl.'s Evidentiary Objections, Docket No. 66.  Defendant requests that this document be disregarded, because it violates Local Rule 7-3(a), which requires that evidentiary objections to the motion should be contained within the opposition.  Because, when added together, Plaintiff's opposition and the additional document containing evidentiary objections total less twenty-five pages, the maximum length allowed for her opposition under Local Rule 7-3(a), the Court exercises its discretion to excuse Plaintiff's failure to comply with the requirement that they be contained within a single document.  Accordingly, Defendant's request is OVERRULED.

To the extent that the Court relies on any evidence to which Plaintiff objects, the Court rules on the objection prior to considering the evidence.  Where necessary, such rulings are discussed below.  To the extent that the Court decides the motion without considering evidence to which Plaintiff has objected, Plaintiff's objections are OVERRULED as moot.

**United States District Court**
For the Northern District of California

About two years later, Plaintiff applied to work at the USDA again and was hired by Dr. Emilio Esteban, then the Laboratory Director of the Western Laboratory, and Leon Ilnicki, the Chemistry Branch Chief (CBC), to work in the Western Laboratory as a Supervisory Chemist paid at the GS-13 level.  Id. at 25:20-27:20; Decl. of Emilio Esteban (Esteban Decl.) ¶ 2.  When Plaintiff began her new position on September 7, 2003, Mr. Ilnicki was her direct supervisor.  Kim Depo., at 30:4-9.

Mr. Ilnicki took sick leave in 2005 and resigned due to illness shortly after taking leave.  Id. at 30:7-9, 60:19-22; Esteban Decl. ¶ 2.  After Mr. Ilnicki left, Dr. Esteban became Plaintiff's direct supervisor.  Kim Depo., at 30:7-9; Esteban Decl. ¶ 2.  Dr. Esteban assigned Plaintiff to serve in the position of Acting CBC for a period of time in 2005, after Plaintiff complained to him during a meeting that Stephen Powell, another Supervisory Chemist, who was born in 1948, had initially been assigned to serve as the Acting CBC.  Kim Depo., at 64:10-16.  From mid-2005 through early January 2006, Plaintiff and Mr. Powell rotated in this position.  Powell Depo., at 20:3-4; Esteban Decl. ¶ 4; Opp. at 2.

On July 13, 2005, Dr. Esteban gave Plaintiff a performance review for the period from July 1, 2004 through June 30, 2005.  Dr. Esteban rated Plaintiff at the highest level overall, with an "OUTSTANDING" rating, and in each individual performance element,

with an "EXCEEDS" rating, including for supervision.  Rogers Decl. ¶ 4, Ex. 7, Esteban Depo., Ex. 1, at 1.

In June 2005, Dr. Esteban posted a vacancy announcement for the permanent CBC position.  Esteban Decl. ¶ 5.  The vacancy announcement was open until February 2006 and was advertised multiple times.  Id.  Plaintiff saw continued advertisements of the position in local and national media outlets in December 2005 and sometime between then and July 2006.  Kim Depo., at 71:1-8.  Three candidates, including Plaintiff, who met the minimum requirements for the position, applied and were placed onto a Promotion Certificate.  Esteban Decl. ¶ 5.  The other two applicants placed on the Promotion Certificate were born in 1952 and 1958.  Id. at ¶ 6.  Dr. Esteban decided that none of the three candidates was appropriate for the position and did not interview any of them.  Id. at ¶ 5.[2]

Plaintiff was informed that she was not selected for the position on October 24, 2005 and again on July 6, 2006.  Id. at ¶¶ 6, 7, Exs. D and E; Kim Depo., at 71:2-8; 72:24-73:4.  The July 6, 2006 letter stated that the Western Laboratory had cancelled the vacancy announcement.  Esteban Decl. ¶ 7, Ex. E.  When Plaintiff asked Dr. Esteban, after she received the July 6, 2006 letter, why she was not selected, he told her that the reason was

---

[2] Plaintiff objects to paragraph five of Dr. Esteban's declaration as lacking foundation and conclusory.  However, this statement is based on Dr. Esteban's personal knowledge.  Accordingly, Plaintiff's objections are OVERRULED.

"a budget problem." Kim Depo., at 72:24-73:13. Dr. Esteban now states that he rejected Plaintiff for the position because he believed that she did not have the supervisory and management skills necessary for the position, she consistently had difficulty meeting deadlines and completing administrative tasks, and other staff members complained that she was too intrusive into their personal lives. Esteban Decl. ¶ 7.[3]

In 2005 or 2006, Mr. Powell informed Dr. Esteban that he intended to retire in March 2007. Powell Depo., at 13:2-15:2. Dr. Esteban asked him to stay to train, and to transfer his institutional knowledge to, Catalina Yee and Dr. Patricia Nedialkova.[4] Powell Depo., at 13:12-16:21. Dr. Nedialkova's national origin is described as "American" and she was born in 1975. Nedialkova Decl. ¶ 4. Defendant states, and Plaintiff does not dispute, that Ms. Yee's national origin is "USA" and she was born in 1961.

From January 13, 2006 through April 30, 2007, Plaintiff continuously served as Acting CBC. Kim Depo., at 65:10-23.

---

[3] Plaintiff objects to the relevant portion of paragraph seven of Dr. Esteban's declaration as lacking foundation, conclusory and hearsay. However, the statements contained therein are based on Dr. Esteban's personal knowledge. Further, Dr. Esteban's statement that the staff members made complaints are not offered to prove the truth of the matter contained in the complaints, but rather as evidence of his motive for rejecting Plaintiff for the promotion. Accordingly, Plaintiff's objections are OVERRULED.

[4] Dr. Nedialkova was known as Patricia Linden for some of the time period relevant to this case. Opp. at 1 n.1.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

During this time, Dr. Nedialkova and Ms. Yee served as Acting Supervisory Chemists.  Esteban Depo., at 90:13-17, Ex. 3.   While Plaintiff was serving as Acting CBC, she made some of her subordinates feel uncomfortable by asking them about personal matters and by engaging them in long conversations that were not work-related.  Nedialkova Depo., at 30:5-25.

In June or July 2006, Dr. Esteban gave Plaintiff a performance review for the period from July 1, 2005 through June 30, 2006.  Esteban Depo., Ex. 1, at 2; Kim Depo., at 85:25-86:2. In this review, Dr. Esteban gave Plaintiff an overall "SUPERIOR" rating, the second highest rating.  Esteban Depo., Ex. 1, at 2. He gave her the highest "EXCEEDS" rating in three individual categories, and the middle "MEETS" rating, in two, including for Supervision.  Id.  When they met to discuss this review, Dr. Esteban told Plaintiff that she was "not energetic enough to supervise" others.  Kim Depo., at 85:25-86:2.

In October 2006, after operating without a permanent CBC for more than a year, Dr. Esteban decided to eliminate the CBC position and reorganize the Chemistry Branch of the Western Laboratory.  Esteban Decl. ¶ 8.  As part of the reorganization, Dr. Esteban began to develop a new position, Lead Chemist, with the intention of moving Plaintiff into it from the Supervisory Chemist position.  Id.  The Lead Chemist position had the same responsibilities as the Supervisory Chemist except that it lacked a supervisory component.  Id.  The Lead Chemist and the

Supervisory Chemist positions had the same pay grade and salary. Id. The Lead Chemist would provide additional training and expertise for the less experienced chemists, and would act as a consultant for them. Esteban Decl. 17, Ex. H (Esteban September 19, 2007 Affidavit (Esteban Aff.)), at 15.[5] As part of the reorganization, Dr. Esteban also promoted two Chemistry Analysts, Dr. Nedialkova and Ms. Yee, to the position of Supervisory Analyst. Esteban Decl. ¶ 8.

In January 2007, the CBC at the Food Emergency Response Network (FERN) requested a report on what methods the Western Laboratory used. Esteban Decl. ¶ 11.[6] As Acting CBC, Plaintiff sent a report. Id. Dr. Esteban determined that the report Plaintiff sent was incomplete and asked her to revise it to include an analysis that she had omitted. Id.

---

[5] Plaintiff challenges the admissibility of affidavits attached to the declarations of Dr. Esteban, Kenneth Dobson, and John Rivera, which these individuals had submitted in connection with the earlier EEO investigations, based on a general and unexplained objection that they are hearsay. Pl.'s Evidentiary Objections, at 4, 6, 7. These affidavits are sworn statements made in front of officers authorized to administer oaths. See 29 C.F.R. § 1614.108(c)(2). Accordingly, Plaintiff's objections are OVERRULED.

[6] Plaintiff objects to the admissibility of paragraphs eleven and thirteen of Dr. Esteban's declaration based on lack of foundation and the best evidence rule. However, the statement contained therein are based on his personal knowledge. Further, his statement regarding the documents is offered to prove his assessment of Plaintiff's writing skills and work performance and is not offered to prove the content of the documents. Accordingly, Plaintiff's objections are OVERRULED.

In February 2007, Dr. Esteban asked Plaintiff to edit a document to add a paragraph justifying the purchase of certain laboratory equipment.  Id. at ¶ 13.  She failed to do so.  Id. Dr. Esteban decided that her written work product was of poor quality and re-wrote the document.  Id.

On February 26, 2007, while Plaintiff was serving as the Acting CBC, at the GS-13 level, she sent an email to Dr. Esteban, requesting that she be temporarily promoted to Acting CBC at Grade-14 pay for 120 days from that date.  Kim Depo., at 75:7-77:24; Esteban Decl. ¶ 9, Ex G.  At the time of Plaintiff's request, there was no vacancy announcement pending for the permanent CBC position.  Kim Depo., at 77:16-18.

On March 6, 2007, Plaintiff met with Dr. Esteban for her midterm performance evaluation.  Id. at 80:12-19.  During that meeting, Dr. Esteban told her that her request to be promoted to a Grade-14 position of Acting CBC was denied and that he was eliminating the CBC position.  Id. at 79:7-12, 82:15-17.  He told her that the reason for his denial was that there was a budget problem.  Id. at 79:13-14.  During that conversation, Dr. Esteban also informed Plaintiff that she would be moved from the Supervisory Chemist to the Lead Chemist position.  Id. at 84:21-85:17.  Dr. Esteban explained that Plaintiff was not "energetic enough to be a supervisory chemist," that he "wanted to have young one," and that she was "not aggressive enough to be a supervisor."  Id. at 82:24-25, 85:18-86:7.  Dr. Esteban also

United States District Court
For the Northern District of California

informed Plaintiff that Dr. Nedialkova would take the Supervisory Chemist opening. Kim Depo., at 84:17-20. After the meeting, Plaintiff submitted a request for training to increase her skills as a supervisor. Esteban Aff. at 7.

On March 26, 2007, Plaintiff wrote a letter, which was forwarded to the Equal Employment Office (EEO), containing complaints about discrimination. Id. at 87:22-88:4. Plaintiff filed a written complaint on May 31, 2007. Rogers Decl. ¶ 3, Ex. 3. In her complaint, Plaintiff alleged that Dr. Esteban had discriminated against her on the basis of age by "preventing her merit promotion to Chemistry Branch Chief." Id. at 3. Plaintiff also made several other allegations, including age discrimination in her performance reviews and in moving her to the Lead Chemist position. Id.

In July 2007, Dr. Esteban signed Plaintiff's performance evaluation for the July 1, 2006 through June 30, 2007 time period. Rogers Decl., Ex. 4, at 19. In this evaluation, Dr. Esteban gave Plaintiff an overall "SUPERIOR" rating, the second highest rating out of five possible ratings. Id. Dr. Esteban gave Plaintiff the highest "EXCEEDS" rating in two individual categories, and the middle "MEETS" rating in three, including for Supervision. Id.

In February 2008, Dr. Esteban left the Western Laboratory after receiving a promotion. Esteban Decl. ¶ 10. From February 12, 2008 through June 12, 2008, John Rivera and Dave Martin served as Acting Laboratory Directors for the Western Laboratory. Rivera

Decl. ¶ 1; Esteban Decl. ¶ 10.  When they began as acting directors, Plaintiff was researching a new Carbadox method, and she presented many issues related to the new method at a meeting on June 3, 2008.  Kim Decl. ¶ 19.

While Dr. Rivera was acting director, he "instructed [Plaintiff] to work with the supervisors" of the chemistry analysts and to go through the supervisors in order to assign work to the analysts whom they supervised, but "she refused to do it" and would instead go directly to the chemistry analysts.  Rivera Decl. ¶ 3, Ex. A (Rivera March 16, 2010 Affidavit (Rivera Aff.)), at 4; Nedialkova Depo., at 80:12-16.  Plaintiff also failed to provide Dr. Rivera with progress reports that he requested.  Rivera Aff., at 4.  Plaintiff did not complete an assignment related to hormones.  Id.

In August 2008, Plaintiff received a performance appraisal for the July 1, 2007 through June 30, 2008 appraisal period.  Sladden Decl. ¶ 14, Ex. M.  The appraisal was a composite of two sets of ratings, one given by Dr. Esteban for the time period through February 16, 2008 and one by Dr. Rivera from February 17, 2008 through June 12, 2008.  Id.  Both sets of ratings were identical: "FULLY SUCCESSFUL" for her overall rating, and average "MEETS" ratings for each of the individual categories.  Id.  Dr. Rivera gave her these ratings because he felt that she "did not contribute to the team" and did not complete at least one assignment as required.  Rivera Aff., at 4.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

In June or July 2008, Dr. Kenneth Dobson began as the Laboratory Director for the Western Laboratory.  Dobson Decl. ¶ 1; Kim Decl. ¶ 17.

At some point after that, Plaintiff began refusing to communicate with the Supervisory Chemists and told them that she was only required to communicate with and share information with her supervisor, not with her peers.  Nedialkova Depo., at 59:11-16, 77:20-25.  The Supervisory Chemists reported this to their supervisor, Dr. Dobson, who was also Plaintiff's supervisor. Nedialkova Depo., at 77:20-25.

When Plaintiff went to his office, Dr. Dobson would turn around and leave.  Pl.'s Response to Def.'s Interrogatories (Resp. to Interrogatories), at 3.  When Plaintiff would speak in meetings, Dr. Dobson would not listen to what she had to say and would talk to Ms. Yee or Dr. Nedialkova instead of responding to Plaintiff.  Rogers Decl. ¶ 4, Ex. 11 (Deposition of Carlos Hernandez (Hernandez Depo.)), at 23:12-24.  Other employees believed that Dr. Dobson was "cold" to Plaintiff.  Id. at 23:17-19.  On one occasion, Dr. Dobson fell asleep while she was giving a presentation during a meeting.  Id. at 20:18-22.

At some unspecified point, in a staff meeting, Dr. Dobson remarked that he had to treat every employee like the worst possible employee, or "somebody with the last name like 'Perez' would sue him."  Rogers Decl. ¶ 4, Ex. 9 (Deposition of Karen Thomas (Thomas Depo.)), at 20:12-19.

11

**United States District Court**
For the Northern District of California

In or about October 2008, Dr. Rivera was asked to provide a member for the newly created Chemistry Method Steering Group. Rivera Aff., at 4.  Dr. Charles Pixley, Director of the Laboratory Quality Assurance, told him that the member had to be a supervisor.  Id. at 4-5.  Because there was no CBC at the time, Dr. Rivera asked that either Ms. Yee or Dr. Nedialkova, as the Supervisory Chemists, serve on the committee; Dr. Nedialkova was ultimately placed on the committee.  Id.

On January 3, 2009, Plaintiff filed a second employment discrimination complaint alleging that she was subjected to retaliation and age and national origin discrimination when she was given the rating of "FULLY SUCCESSFUL" on her August 2008 performance review and when she was not selected to serve on the Chemistry Method Steering Group.  Rogers Decl., Ex. 4; 2AC ¶ 4; Answer ¶ 4; Opp. at 10.

Dr. Dobson did not give Plaintiff any projects.  Kim Depo., Ex. 14, Resp. to Interrogatories, at 3.  On January 29, 2009, Dr. Dobson took away all of Plaintiff's projects, except the Melamine project.  Id.  However, work on the Melamine project was stopped on January 29, 2009.  Kim Depo., at 108:17-22.

Defendant does not dispute that Plaintiff subsequently amended her second administrative complaint to allege that Dr. Dobson's reassignment of her projects to other employees in January 2009 was also the result of retaliation and discrimination.  11/17/2011 Hr'g Tr. 13:23-15:11.

On April 23, 2009, Dr. Dobson sent an email to a colleague stating that he was looking for projects for Plaintiff to do, in order to address her perception that she was "'marginalized' by her position." Rogers Decl. ¶ 2, Ex. 1.  Dr. Dobson also stated that he was seeking projects suitable for a chemist who "doesn't go into the lab because of 'chemical sensitivity.'"  Id.

In late 2009, the Western Laboratory was assigned the new responsibility of hormone detection, a function that was previously performed by another laboratory.  Dobson Decl. ¶ 8. This additional responsibility would require additional analysis or "bench work" done in the laboratory.  Id.  To meet this additional responsibility, Dr. Dobson decided that he would eliminate the Lead Chemist position and assign some of the responsibilities of the role to the Supervisory Chemist position, while changing Plaintiff to the role of Chemistry Analyst.  Id.

On November 24, 2009, Dr. Dobson sent an email to a colleague describing his plan to change Plaintiff's job position.  Rogers Decl., Ex. 2.  In the email, he stated that he had been given the results of a survey of employees that stated that Plaintiff "apparently does nothing" and that he needs "to do a better job managing her." Rogers Decl., Ex. 2.  Attached to the email was a diagram that showed that Dr. Dobson planned to re-assign Plaintiff either to a solo project or to the laboratory and that he would consider the situation resolved if Plaintiff were to perform well, quit or be terminated.  Id.  The diagram also showed that, if

13

Plaintiff were to assert that she had a chemical sensitivity, he planned to require her to see a doctor, pursuant to regulation, to confirm the diagnosis or face progressive discipline, up to termination.  Id.  If a doctor were to confirm that she had a chemical sensitivity, that would mean that she could not work in the laboratory, and she would be terminated as unfit for the position.  Id.

In December 2009, Dr. Dobson decided to reinstate the CBC position and posted the position through a vacancy announcement. Dobson Decl. ¶ 7.  Plaintiff was not on the Promotion Certificate for this vacancy.  Id.  Dr. Nedialkova was selected for the position on February 22, 2010.  Id.

On March 3, 2010, Dr. Dobson and Dr. Nedialkova told Plaintiff that she would have to work on a hormone method and that she would have to work in the laboratory the next week.  Kim Depo., at 161:23-162:11.

On March 4, 2010, Dr. Dobson told Plaintiff that he was changing her position from Lead Chemist to Chemistry Analyst.  Id. at 165:21-24.  Dr. Dobson and Dr. Nedialkova also told Plaintiff that she would have to vacate her office and move to a desk in the "train," an area attached to the lab where all of the chemists sat.  Id. at 166:1-8.  They told her that she had to move there by the end of the next day.  Id. at 164:1-3.  At that time, Plaintiff did not state that she could not work in the laboratory or the train due to chemical sensitivities.  Id at 166:14-16.  Instead,

14

Plaintiff resigned her position that day.  Kim Depo., at
160:24-161:1; Sladden Decl. ¶ 15, Ex. N.

On May 17, 2010, Plaintiff filed this action, alleging
violations of the ADEA and Title VII based on the claims
comprising the two administrative complaints described above.[7]

On July 6, 2010, Plaintiff filed another administrative
complaint, alleging that she was subjected to retaliation and
discrimination based on her age, national origin, and race when
she was demoted from Lead Chemist to Chemist and constructively
discharged on March 4, 2010.  Sladden Decl. ¶ 13, Ex. L.  There is
no dispute that Plaintiff exhausted her administrative remedies as
to each of her administrative complaints.

On February 9, 2011, after being granted leave to amend,
Plaintiff filed a second amended complaint (2AC), containing three
claims: (1) unlawful discrimination based on age in violation of
the ADEA; (2) unlawful discrimination based on national origin in
violation of Title VII for conduct after March 26, 2007; and
(3) retaliation after March 26, 2007 in violation of the ADEA and
Title VII.  Defendant now moves for summary judgment as to all
three counts.

_____

[7] Plaintiff also filed an administrative complaint on January
29, 2010 alleging that she had been discriminated against based on
her age when she learned on January 27, 2010 that she would not be
considered for the reinstated CBC position.  Sladden Decl. ¶ 12,
Ex. K.  She withdrew this complaint on February 5, 2010, id., and
she does not raise the claim in the instant case.

United States District Court
For the Northern District of California

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

16

> The moving party may produce evidence negating
> an essential element of the nonmoving party's
> case, or, after suitable discovery, the moving
> party may show that the nonmoving party does not
> have enough evidence of an essential element of
> its claim or defense to carry its ultimate
> burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d
1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an
absence of evidence to support an essential element of a claim or
defense, it is not required to produce evidence showing the
absence of a material fact on such issues, or to support its
motion with evidence negating the non-moving party's claim.  Id.;
see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990);
Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If
the moving party shows an absence of evidence to support the non-
moving party's case, the burden then shifts to the non-moving
party to produce "specific evidence, through affidavits or
admissible discovery material, to show that the dispute exists."
Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an
essential element of the non-moving party's claim or defense, it
must produce affirmative evidence of such negation.  Nissan, 210
F.3d at 1105.  If the moving party produces such evidence, the
burden then shifts to the non-moving party to produce specific
evidence to show that a dispute of material fact exists.  Id.

**United States District Court**
For the Northern District of California

1    If the moving party does not meet its initial burden of

2    production by either method, the non-moving party is under no

3    obligation to offer any evidence in support of its opposition.

4    Id.  This is true even though the non-moving party bears the

5    ultimate burden of persuasion at trial.  Id. at 1107.

6                              DISCUSSION

7    I.  Plaintiff's Discrimination Claims

8        In Count One of her 2AC, Plaintiff claims that Defendant's

9    

10   treatment of her before and after March 26, 2006 violated the

11   ADEA.  In Count Two of her 2AC, Plaintiff claims that Defendant's

12   treatment of her after March 26, 2006 constituted prohibited

13   discrimination based on national origin under Title VII.  In her

14   opposition, Plaintiff clarifies that she is claiming that the

15   following adverse employment actions were discriminatory: "She was

16   denied permanent promotion and temporary designation to CBC, she

17   was given poor performance reviews, she was marginalized and

18   deprived of assignments, and she was constructively discharged."

19   

20   Opp. at 6.  While Plaintiff urges the Court to consider the

21   discrete adverse acts collectively, the Ninth Circuit has

22   cautioned that district courts should consider a plaintiff's

23   "claim of discrimination with regard to each of these employment

24   decisions separately, examining the specific rationale offered for

25   each decision and determining whether that explanation supported

26   the inference of pretext.'"  Odima v. Westin Tucson Hotel Co., 991

27   

28

F.2d 595, 600 (9th Cir. 1993) (quoting <u>Norris v. San Francisco</u>, 900 F.2d 1326, 1330 (9th Cir. 1990)).

A. Legal Standard

Plaintiff pursues claims under the ADEA and Title VII using a theory of disparate treatment.  Therefore, she must provide evidence of intentional age or national origin discrimination by Defendant.

In disparate treatment cases, plaintiffs can prove intentional discrimination through direct or indirect evidence. <u>Enlow v. Salem-Keizer Yellow Cab Co.</u>, 389 F.3d 802, 812 (9th Cir. 2004).  Direct evidence is "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision."  <u>Id.</u> (citation and internal quotation and editing marks omitted).  When a plaintiff submits actual evidence of discrimination, "very little such evidence is necessary to raise a genuine issue of fact regarding an employer's motive."  <u>Lowe v. Monrovia</u>, 775 F.2d 998, 1009 (9th Cir. 1985).  Even if an employer proffers a non-discriminatory reason for the action, direct evidence of discrimination "necessarily" raises "a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision." <u>Id.</u>

United States District Court
For the Northern District of California

Because direct proof of intentional discrimination is rare, such claims may also be proved circumstantially. See Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005). ADEA and Title VII claims based on circumstantial evidence are analyzed through the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). See Shelley v. Geren, 2012 U.S. App. LEXIS 623, at *18-22 (9th Cir. 2012) (finding McDonnell Douglas framework still applicable to motions for summary judgment on ADEA claims after the Supreme Court's decision in Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009)).

At the first step of the McDonnell Douglas analysis, Plaintiff must establish a prima facie inference of discrimination. See Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008). A prima facie showing includes proof that 1) the plaintiff is a member of a protected class or, in the age discrimination context, over forty years of age; 2) the plaintiff is qualified for the position in question or is performing her job satisfactorily; 3) the plaintiff suffered an adverse employment action; and 4) the plaintiff was treated differently than a similarly situated employee who did not belong to the same protected class. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000) (citing Nidds v. Schindler Co., 113 F.3d 912, 917 (9th Cir. 1997)); Washington v.

United States District Court
For the Northern District of California

*Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993); *Sischo-Nownejad v. Merced Community College*, 934 F.2d 1104, 1109-10 & n.7 (9th Cir. 1991).  In the context of non-selection for a promotion, this final factor may be shown by demonstrating that "the position remained open after his or her rejection and the employer continued to seek applications from other people with similar qualifications to the plaintiff."  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  "[V]ery little evidence" must be produced to make the *prima facie* case.  *Sischo-Nownejad*, 934 F.2d at 1110-11.

Once a plaintiff has established a *prima facie* inference of discrimination, he or she will generally have raised a genuine issue of material fact regarding the legitimacy of the employer's articulated reason for her termination.  Accordingly, a factual question will almost always exist, and summary judgment will not be appropriate.  *Id.* at 1111; *Washington*, 10 F.3d at 1433.  However, in those cases where the *prima facie* case consists of no more than the minimum necessary to create a presumption under *McDonnell Douglas*, the plaintiff must produce some evidence of pretext to overcome summary judgment if the employer articulates a non-discriminatory reason for the adverse treatment.  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

When a plaintiff presents direct evidence that the proffered explanation is a pretext for discrimination, "very little evidence" is required to avoid summary judgment.  *EEOC v. Boeing*

<u>Co.</u>, 577 F.3d 1044, 1049 (9th Cir. 2009).  In contrast, when a plaintiff relies on circumstantial evidence, "'that evidence must be specific and substantial to defeat the employer's motion for summary judgment.'"  <u>Id.</u> (quoting <u>Coghlan v. Am. Seafoods Co. LLC</u>, 413 F.3d 1090, 1095 (9th Cir. 2005)).

    B. Age Discrimination in Plaintiff's March 26, 2007
       Administrative Complaint

        1.  Denial of Permanent CBC position

To make her <u>prima facie</u> case, Plaintiff offers actual evidence of age discrimination in Dr. Esteban's refusal to promote her to the position of permanent CBC.  Plaintiff testified that, at the time Dr. Esteban first informed her that he was eliminating the supervisory permanent CBC position, he told her that she was not "energetic enough to be a supervisory chemist," that he "wanted to have young one," and that she was "not aggressive enough to be a supervisor."  Kim Depo., at 82:24-25, 85:18-86:7. Thus, Plaintiff has introduced a statement by Dr. Esteban, the relevant decision-maker, that raises a triable issue of fact as to whether an age-discriminatory attitude motivated Dr. Esteban's decision to eliminate the permanent CBC position rather than promote Plaintiff to fill it.  Defendant argues that there was no permanent CBC position open and that Dr. Esteban has previously proffered various explanations for his denial of the promotion, including budgetary reasons and his perception that Plaintiff lacked adequate supervisory skills.  Nonetheless, Plaintiff has

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

presented evidence that raises a genuine question of material fact as to whether the elimination of the position was based on age-based animus and the proffered reasons were pretextual.  See Dominguez-Curry, 424 F.3d at 1039 ("a single discriminatory comment by a plaintiff's supervisor or decision maker is sufficient to preclude summary judgment for the employer").

Defendant argues that Plaintiff's claims for discrimination based upon the denial of her applications for the permanent CBC position are time-barred.  The evidence shows that Plaintiff was first informed that she was not selected for the position on October 24, 2005.  Esteban Decl. at ¶ 6, Ex. D.  Plaintiff was informed again on July 6 or 7, 2006 that she was not selected for the position; at that time, she was also told that the vacancy announcement had been canceled.  Id. at ¶ 7, Ex. E; Kim Depo., at 71:2-8; 72:24-73:4.  On March 6, 2007, Dr. Esteban informed Plaintiff that he was eliminating the permanent CBC position altogether.  Kim Depo., at 82:15-17.  The parties agree that Plaintiff's first contact with an EEO counselor was made on March 26, 2007 and that she filed her initial complaint on May 31, 2007.  Opp. at 2; Reply, at 3.

Federal regulations require aggrieved federal employees to contact an EEO counselor within forty-five days of the alleged discriminatory action.  29 C.F.R. § 1614.105(a)(1).  At the hearing, Plaintiff's counsel argued that Plaintiff did not learn that she was being discriminated against until March 6, 2007

23

during her meeting with Dr. Esteban and that the relevant time period did not start until then.  In support of this argument, Plaintiff's counsel cited Jones v. Dillard's, Inc., 331 F.3d 1259 (11th Cir. 2003), in which the Eleventh Circuit permitted equitable tolling of an ADEA claim where the plaintiff did not have sufficient information to plead a claim based on discrimination in termination until after the limitations period had run.  Id. at 1266.

In Jones, the court found that, until the employer had hired her replacement, the plaintiff had no information, other than rumors and suspicion, to support that she was fired for any reason other than the pretextual reason she was given, which in that case was the financial status of the company.  Id. at 1267-68.  The Jones court distinguished several other cases in the Eleventh Circuit in which equitable tolling was not applied, where the plaintiffs "had sufficient evidence of their age discrimination claims to file an EEOC charge within the limitations period," because they learned of their younger replacements within that time period.  Id. at 1267.  In so holding, the court in Jones stated, "The applicable limitations period did not begin to run until the facts supporting a cause of action became apparent or should have became [sic] apparent to a reasonably prudent person with concern for his or her rights."  Id.

The Ninth Circuit has also held that equitable tolling applies to claims brought under the ADEA.  Forester v. Chertoff,

24

**United States District Court**
For the Northern District of California

500 F.3d 920, 925 (9th Cir. 2007).  "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000), overruled in part on other grounds, 272 F.3d 1176, 1194 (9th Cir. 2000).  "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend to [sic] statute of limitations for filing suit until the plaintiff can gather what information he needs."  Id.  "However, equitable tolling does not postpone the statute of limitations until the existence of a claim is a virtual certainty."  Id.  Thus, the Ninth Circuit has held that equitable tolling does not apply if the plaintiff "knew or reasonably should have known of the possible existence of a . . . discrimination claim within the limitations period," even if the plaintiff has not "marshaled every conceivable item of proof he might eventually be able to use at trial."  Id. at 1179.

Plaintiff has introduced evidence that, if credited, could prove that, like in Jones, the facts necessary for Plaintiff sufficiently to allege a cause of action based on discrimination were not apparent until Dr. Esteban informed her that he was eliminating the permanent CBC position, and told her that he "wanted to have young one."  Defendant has not shown that a reasonable plaintiff would have suspected prior to the March 6, 2007 meeting that Dr. Esteban's stated reasons for denial of the

promotion were pretextual and that the decision was actually motivated by age-based animus.  Thus, there is a dispute of material fact as to whether Plaintiff's claim of a discriminatory promotion denial was equitably tolled until that date.  If it was, Plaintiff's claim would not be time-barred, because Plaintiff contacted an EEO counselor less than forty-days after that meeting.

Accordingly, Defendant's motion is DENIED to the extent that it seeks summary judgment on Plaintiff's claim for age discrimination in a promotion denial.

2.   Denial of Promotion to GS-14 Acting CBC Position

Plaintiff also alleges that Defendant discriminated against her in denying her a temporary 120-day promotion to a GS-14 Acting CBC position on March 6, 2007, though Plaintiff continued to serve as Acting CBC at a GS-13 level through April 30, 2007.  Because Dr. Esteban denied her temporary promotion to GS-14 Acting CBC in the same meeting in which Plaintiff says he made an overtly age discriminatory statement, Plaintiff has raised a factual dispute as to whether Defendant engaged in discrimination.  Defendant argues that "the denial was based upon her poor supervisory skills."  Mot. at 17.  However, Plaintiff's proffered evidence raises a factual dispute as to whether this reason was pretextual. Defendant also argues that the CBC position was being eliminated entirely.  However, this does not explain the refusal to promote her to the GS-14 position through April 30, 2007.  Further, as

26

already addressed above, Dr. Esteban's statement raises a genuine question of material fact as to whether the elimination of the position was actually based on age-based animus. Accordingly, Plaintiff has met her burden on summary judgment, and Defendant's motion is DENIED to the extent that it seeks summary judgment on her claim for age discrimination in the denial of a temporary promotion.

C. Age and National Origin Discrimination Claims in Plaintiff's January 3, 2009 Administrative Complaint

Defendant argues that Plaintiff should not be permitted to raise claims based on age and national origin discrimination from her January 3, 2009 administrative complaint. Defendant bases this argument on the Court's February 3, 2011 order granting Plaintiff leave to file a second amended complaint to allege claims based on the July 6, 2010 administrative complaint. However, Defendant fails to recognize that Plaintiff had already plead the discrimination claims arising from her January 3, 2009 administrative complaint in her First Amended Complaint (1AC), see 1AC ¶¶ 9-10, Docket No. 4, and thus these claims were not at issue in the Court's February 3, 2011 order.

In Plaintiff's January 3, 2009 administrative complaint, she alleged that she was subjected to retaliation and discrimination based on her age and national origin when she was given a rating of "FULLY SUCCESSFUL" on her August 2008 performance review and when she was not selected to serve on the Chemistry Method

United States District Court
For the Northern District of California

Steering Group.  Rogers Decl., Ex. 4; 2AC ¶ 4; Answer ¶ 4.  It is not disputed that this administrative complaint also contained an allegation that Plaintiff was subjected to age and national origin discrimination and retaliation when her supervisor gave her projects to other employees in January 2009.  Opp. at 10.

1. Non-selection to the Chemistry Method Steering Group

Defendant argues that Dr. Rivera's non-selection of Plaintiff for the Chemistry Method Steering Group was not an adverse employment action.  The Ninth Circuit defines "'adverse employment action' broadly." Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d 840, 847 (9th Cir. 2004) (citing Ray v. Henderson, 217 F.3d 1234, 1241 (9th Cir. 2000); see also Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000) (collecting cases).  An adverse employment action is one that "materially affect[s] the compensation, terms, conditions, or privileges of . . . employment." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).  However, "[n]ot every employment decision amounts to an adverse employment action." Brooks, 229 F.3d at 928.  Defendant argues that Plaintiff's non-selection for the committee was not an adverse employment action, because it had no material impact on her employment, title, grade, duties, promotional opportunities or duties.  Mot. at 9.  Defendant further argues that there was a non-discriminatory reason for the decision: that the members of the group had to be CBCs or otherwise in supervisory roles.  Id.; Rivera Aff., at 4-5.  Plaintiff does not

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

respond to either of these arguments.   Plaintiff also adduces no evidence of discriminatory intent on Dr. Rivera's part. According, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's discrimination claims arising from her non-selection to the Chemistry Advisory Group.

2. August 2008 Performance Review

Defendant argues that Plaintiff has failed to establish a prima facie case of discrimination as to her final 2008 performance review, because she not identified any similarly situated person outside of her protected class who was treated more favorably than she was.   Mot. at 20.   In his reply, Defendant also argues that the evaluation was not an adverse action and did not affect the material terms of her employment.   Reply, at 10. However, "undeserved performance ratings, if proven, would constitute 'adverse employment decisions.'"   Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987).   While she seeks to rebut Defendant's evidence that her work performance was flawed and thus argue that the proffered non-discriminatory reasons are pretextual, Response at 12, Plaintiff does not respond to the contention that she has not established a prima facie case of discrimination on this basis.   At the hearing, Plaintiff's counsel conceded that she could not establish that similarly situated people outside of her protected class had been treated more favorably.   According, the Court GRANTS Defendant's motion for

summary judgment as to Plaintiff's discrimination claims arising from her 2008 performance review.

### 3. Reassignment of Projects in January 2009

Defendant argues that Plaintiff cannot establish a prima facie case for discrimination based on Dr. Dobson's reassignment of all of her projects on January 29, 2009. Defendant states that the projects at issue had not been assigned to her in the first place. However, Plaintiff has submitted evidence that the projects were initially assigned to her, and points out that Dr. Dobson's prior affidavit states that they had been assigned to her. Resp. to Interrogatories, at 4; Dobson Aff., at 83-84. There is no dispute that the projects were re-assigned to Dr. Nedialkova and Ms. Yee. Dobson Aff., at 84; Dobson Decl. ¶ 11, Ex. D. Further, Defendant acknowledges that Dr. Nedialkova is approximately thirty-seven years younger than Plaintiff and Ms. Yee is approximately twenty-three years younger than Plaintiff, and that both are of "American" national origin. Plaintiff has produced evidence that her projects were re-assigned to colleagues who were substantially younger and of a different national origin than she. Defendant has not challenged that she is of a protected national origin class, Korean, over forty years old and qualified to complete the projects. Plaintiff has established a prima facie case that Dr. Dobson's reassignment of her projects constituted age and national origin discrimination.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Defendant states that there was a non-discriminatory reason for Dr. Dobson's re-assignment of Plaintiff's projects: the need for Plaintiff to focus her attention on the Melamine project, which was the highest priority at the time.  Mot. at 9.  However, Plaintiff has testified that work on the Melamine project was stopped on January 29, 2009.  Kim Depo., at 108:17-22; Mot. at 10.  Thus, Plaintiff has produced evidence rebutting the proffered non-discriminatory reason "indirectly by showing that the employer's proffered explanation is unworthy of credence."  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).  Accordingly, Defendant's motion for summary judgment is DENIED as to Plaintiff's claims for national origin and age discrimination arising from the January 2009 reassignment of all of her projects.

D.  Plaintiff's July 6, 2010 Administrative Complaint

In her July 6, 2010 administrative complaint, Plaintiff alleged that she had been subjected to discrimination based on her national origin and age when she was constructively discharged by being demoted from Lead Chemist to Chemist and moved to the laboratory space.  Sladden ¶ 13, Ex. L.  In her complaint and in her opposition to this motion, Plaintiff argues that this was a constructive termination because Dr. Dobson knew that she could not work in the laboratory due to chemical sensitivity and so deliberately took these actions to force her to quit.  3AC ¶ 17.

A constructive discharge occurs when the "working conditions deteriorate, as a result of discrimination, to the point that they

become 'sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.'" Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000) (quoting Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1246 (1994)).  "The determination whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact." Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir. 1987).

In Defendant's reply, he argues for the first time that Plaintiff has failed to meet her burden to "link her constructive discharge to her protected class or national origin."  Reply, at 14.  While it is true that Plaintiff has the burden of persuasion of this element, in his opening brief, Defendant did not produce evidence negating it or argue that Plaintiff does not have enough evidence of this element to carry her ultimate burden of persuasion at trial.  Because Defendant, as the moving party, did not meet his initial burden of production by either method, Plaintiff was under no obligation to offer any evidence in support of her opposition.  See Nissan, 210 F.3d at 1105.  Further, to the extent that Defendant raises an argument regarding causation for the first time in his reply brief, it is waived.  See Graves v. Arpaio, 623 F.3d 1043, 1048 (9th Cir. 2010) ("arguments raised for the first time in a reply brief are waived").

While Defendant acknowledges that Plaintiff has testified that she has a sensitivity to chemicals that causes her neck and back pain, Mot. at 25, he argues that she has not established that work conditions were so intolerable and egregious as to force her to resign.  Mot. at 24.  Defendant also contends that Plaintiff failed to protest her reassignment on the basis of her chemical sensitivity and thus that she did not attempt to resolve the problems related to her employment prior to quitting.  Mot. at 25; Reply, at 14-15.

However, Plaintiff has proffered evidence that could establish that Dr. Dobson, knowing that she would find work conditions in the laboratory intolerable, deliberately moved Plaintiff to the laboratory with the intention of forcing her to quit or creating a reason to terminate her.  Plaintiff has submitted an email, dated April 23, 2009, in which Dr. Dobson acknowledges that Plaintiff has an alleged "chemical sensitivity." Rogers Decl. ¶  Ex. 1.  In another email, sent on November 24, 2009, Dr. Dobson describes his plan to change Plaintiff's job position.  Rogers Decl. ¶  Ex. 2.  Attached to the email is a diagram that shows that Dr. Dobson planned to re-assign Plaintiff either to a solo project or to the laboratory.  Id.  The diagram shows that if Plaintiff asserted that she had a chemical sensitivity, as Dr. Dobson believed she would, he intended to require her to see a doctor to confirm the diagnosis or face progressive discipline, up to termination.  Id.  If a doctor were

to confirm that she had a chemical sensitivity that meant that she could not work in the laboratory, she would be terminated as unfit for the position. Id.

Defendant cites no case that supports the proposition that an employer's deliberate reassignment of an employee to work in a space that would trigger a known chemical sensitivity of the employee could not constitute constructive discharge as a matter of law. Further, while "[a]n employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged," Poland v. Chertoff, 494 F.3d 1174, 1185 (9th Cir. 2007) (quoting Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996)), Plaintiff has presented evidence that could establish that Dr. Dobson deliberately created the problem here in order to force Plaintiff to quit or give him a reason to terminate her. Given that Dr. Dobson already had knowledge of the problem, and in fact anticipated it, the fact that Plaintiff did not raise it at the time of the reassignment did not deprive him of a chance to "work out" the problem.

Accordingly, the Court DENIES Defendant's motion for summary judgment on Plaintiff's claims for age and national origin discrimination based on constructive discharge.

II.  Plaintiff's Retaliation Claims

In her opposition, Plaintiff clarifies that she claims that certain acts alleged in her administrative complaints were retaliatory: the August 2008 "FULLY SUCCESSFUL" performance

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

rating; her exclusion from membership in the Chemistry Method Steering Group; "being stripped of her projects" on January 29, 2009; and the alleged constructive discharge on March 4, 2010. Reply, at 10.

The burden-shifting framework outlined in McDonnell Douglas governs actions for retaliation under Title VII and the ADEA. Lam v. University of Hawaii, 40 F.3d 1551, 1559 (9th Cir. 1994); Heyer v. Governing Bd. of the Mt. Diablo Unified Sch. Dist., 2011 U.S. Dist. LEXIS 70124, at *4-5 n.3 (N.D. Cal.) (citing O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 763 (9th Cir. 1996)). The parties agree that claims of retaliation by an employer require a plaintiff to demonstrate that: (1) he or she engaged in protected activity; (2) he or she was subjected to adverse employment action; and (3) there is a causal link between the plaintiff's protected complaint and the adverse treatment. Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065 (9th Cir. 2004); Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994); Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir. 1984). In the retaliation context, an adverse action is more broadly defined than in the discrimination context, and encompasses those actions that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006). Once a plaintiff has established a prima facie case, the burden shifts to the employer to put forth a

United States District Court
For the Northern District of California

legitimate non-discriminatory reason for the adverse employment action.  Wallis, 26 F.3d at 889.  If an employer meets this relatively light burden, the plaintiff can still prevail if he or she can demonstrate that the reason asserted is simply a pretext. Id. at 889.

Defendant argues that Plaintiff should not be permitted to raise retaliation claims from her January 3, 2009 administrative complaint.  Defendant again bases this argument on the Court's February 3, 2011 order in which the Court granted Plaintiff leave to file a second amended complaint in order to allege claims based on the July 6, 2010 administrative complaint.  However, as previously stated, Defendant fails to recognize that Plaintiff had already plead the retaliation claims arising from her January 3, 2009 administrative complaint in her First Amended Complaint (FAC), see FAC ¶¶ 9-10, Docket No. 4, and thus these claims were not at issue in the Court's February 3, 2011 order.

A. Non-selection to the Chemistry Method Steering Group

Defendant argues that Plaintiff has not established a prima facie case for retaliation based on non-selection for the Chemistry Method Steering Group.  Plaintiff bases her argument for a causal link between her protected complaint and non-selection on the temporal relationship between the two.  However, as Plaintiff herself points out, the "exclusion from the Steering Committee on October 1, 2008, was over two years after Dr. Kim's first complaint of discrimination," Opp. at 10, and several months

United States District Court
For the Northern District of California

before her second complaint.  Given the time period separating the first complaint and the alleged adverse action, an inference of causation cannot be made.  <u>See</u> <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001) (per curiam) (noting that a court may not infer causation from temporal proximity unless the time between an employer's knowledge of protected activity and an adverse employment action is "very close" and citing cases for the proposition that a three-month and four-month time lapse is insufficient to infer causation).  Plaintiff also does not point to any evidence that Dr. Rivera, who made the selection, knew of her EEO complaint prior to making the selection.  Further, as previously discussed, Defendant has proffered a legitimate non-retaliatory reason, that the committee members had to be CBCs or other individuals in supervisory positions, which Plaintiff has not demonstrated is a pretext.

Accordingly, the Court GRANTS Defendant summary judgment as to Plaintiff's retaliation claim based on non-selection to the Chemistry Method Steering Group.

B. 2008 Performance Appraisal

Defendant also argues that Plaintiff has not established a <u>prima facie</u> case for retaliation based on her 2008 performance appraisal, because she cannot establish causation between her protected complaint and the adverse action.  To establish causation, Plaintiff relies on time proximity.  She admits that Dr. Esteban, who signed the 2008 performance appraisal, knew of

her prior EEO complaint by at least April 27, 2007, more than a year before he signed the performance review, which again is too attenuated to give rise to an inference of causation.  Opp. at 10.  Accordingly, the Court GRANTS Defendant summary judgment as to Plaintiff's claim for retaliation based on her 2008 performance review.

C. Reassignment of Projects in January 2009

Defendant does not argue that Plaintiff has not established a prima facie case for retaliation based on the January 2009 reassignment of her projects, which took place less than a month after Plaintiff filed her second administrative complaint. Instead, Defendant proffers a non-retaliatory reason for the action.  The Court has already found that there is a disputed issue of material fact as to the credibility of Defendant's proffered non-retaliatory reason.  Accordingly, the Court DENIES Defendant's motion for summary judgment as to Plaintiff's claim for retaliation based on the January 2009 reassignment of her projects.

D. Constructive Discharge in March 2010

Defendant argues that Plaintiff cannot establish a prima facie case for retaliation when she was constructively discharged by her reassignment to Chemistry Analyst on March 4, 2010, because the length of time between the date the relevant EEO complaint was filed--January 3, 2009--and the adverse action was over a year, which cannot give rise to an inference of causation.  Mot. at 21.

Plaintiff's only response is to assert that Dr. Dobson began "his plan to marginalize and fire Dr. Kim on April 23, 2009" and cites Dr. Dobson's April 23, 2009 email.  Opp. at 10.  However, that email does not contain a plan to marginalize and fire Plaintiff, as she purports.  Instead, Dr. Dobson seeks to find projects that would be suitable for Plaintiff, in an effort to address her feeling that she was marginalized in her current position.  Rogers Decl. ¶ 2, Ex. 1.  Accordingly, the Court GRANTS Defendant summary judgment as to Plaintiff's claim of retaliation arising from constructive discharge based on her reassignment to Chemistry Analyst on March 4, 2010.

CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion for summary judgment in part and DENIES it in part (Docket No. 58).  Defendant's motion for summary judgment is denied as to the following claims:

1. Age discrimination in violation of the ADEA (Count One of the 2AC), based on: (1) denial of the permanent CBC position; (2) denial of the temporary promotion to the GS-15 Acting CBC position; (3) reassignment of all of Plaintiff's projects in January 2009; and (4) constructive discharge.

2. National origin discrimination in violation of Title VII (Count Two of the 2AC), based on: (1) reassignment of all of Plaintiff's projects in January 2009, and (2) constructive discharge.

3. Retaliation in violation of the ADEA and Title VII (Count Three of the 2AC), based on reassignment of all of Plaintiff's projects in January 2009.

IT IS SO ORDERED.

Dated: 2/3/2012

CLAUDIA WILKEN
United States District Judge